**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

GABRIEL VARELA,

Petitioner,

v.

JEREMY CASEY, Warden, Otay Mesa Detention Center; CURRENT OR ACTING FIELD OFFICE DIRECTOR, U.S. Immigration and Customs Enforcement; CURRENT OR ACTING DIRECTOR, United States Immigration and Customs Enforcement; CURRENT OR ACTING SECRETARY, United States Department of Homeland Security; CURRENT OR ACTING UNITED STATES ATTORNEY GENERAL; IMPERIAL REGIONAL DETENTION FACILITY,

Respondents.

Case No.: 3:26-cv-04952-BTM-SBC

**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF NO. 1]**

Pending before the Court is Gabriel Varela's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated below, the Court GRANTS in part and DENIES in part the petition.

## I. BACKGROUND

Petitioner Gabriel Varela is a citizen of Mexico. (ECF No. 7 ("Ret."), at 2.) He has been in the United States since at least 1983. (ECF No. 1 ("Pet."), at 11–12.) Varela attended elementary school and grew up in the United States. (*Id.*) All of Varela's eight children are U.S. citizens. (*Id.*) Varela currently lives in Helmet, California with his fiancé, a U.S. citizen. (ECF No. 11-1 ("Carey Decl."), at 1.) Varela had previously been issued a valid green card, making him a lawful permanent resident. (ECF No. 7-1 ("Ex. 1"), at 3.) On May 16, 1994, Varela was convicted of Burglary under California Penal Code § 459. (Ret., 2.) On September 11, 2012, Varela was convicted of Vehicle Theft under California Vehicle Code § 10851. (*Id.*) He completed his sentences for both convictions.

On July 7, 2026, Varela and his fiancé drove to Mexico through the Andrade Port of Entry. (Carey Decl., 1.) When they arrived at the border inspection location for Mexico customs, the Mexican officer denied them admission into Mexico due to their car having paper temporary license plates. (*Id.* at 1–2.) They were instructed to turn around and return to the United States. (*Id.* at 2.) When they arrived at the United States inspection location, Varela presented his California Identification card to the U.S. Customs and Border Protection Officer and admitted that he did not have his I-551 Permanent resident card in his possession. (Ex. 1, 3.) He was thereafter detained and issued a Notice of Appear ("NTA") as an arriving alien under § 212(a)(2)(A)(i)(II) of the INA. (ECF No. 7-1 ("Ex. 3"), at 6.) He has remained detained at Imperial Regional Detention Facility since July 7, 2026.

## II. LEGAL STANDARD

"A writ of habeas is available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of the custody, and…the traditional function of the writ is to secure release from illegal custody." *Priser v. Rodriguez*, 411 U.S. 475, 484 (1973). Challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v.*

*Davis*, 533 U.S. 678, 687 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

The Respondents initially argue that the Court lacks jurisdiction to review Varela's petition under § 1252(g). (Ret., 4–5.) Notwithstanding the threshold jurisdictional dispute, the Respondents contend that Varela is lawfully detained under either § 1225(b)(2) as an applicant for admission or § 1226(c)(1)(E) as an inadmissible noncitizen[1] who has been convicted of an enumerated crime. (*Id.* at 5–6.)

### A. Jurisdiction

As a threshold matter, the Court finds that Varela's claim is not barred by § 1252(g), which states that "[n]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *See Garcia v. Noem*, 803 F. Supp. 3d 1064, 1073–74 (S.D. Cal. 2025) (holding that § 1252(g) does not limit the District Court's jurisdiction where the petitioner "is enforcing their constitutional rights to due process in the context of removal proceedings—*not* the legitimacy of the removal proceedings or any removal order.") Section 1252(g) should be read "narrowly" to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 991, 996 (9th Cir. Aug. 27, 2025) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Furthermore, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners'

---

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien." 8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings"). Here, the Court has jurisdiction over Varela's Petition because his due process challenge to his ongoing immigration detention does not implicate any of these three discreet actions. *See Salazar v. Casey*, No. 25-cv-2784, 2025 WL 306329, at *2 (S.D. Cal. Nov. 3, 2025).

**B. Mandatory Detention Under 8 U.S.C. § 1225(b)(2)**

Section 1225(b)(2)(A) requires mandatory detention of "'an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]'" *Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)) (emphasis in original). The Respondents argue that Varela was determined to be inadmissible under § 1182(a)(6)(A)(i), as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Ret., 2.) The NTA issued for Varela further specifies that he was an "arriving alien" who "applied for admission" on July 7, 2026 at Andrade. (NTA, 6–9.) The Government also contends that Varela has not been granted temporary parole. (Ret., 6.)

The problem with the Respondents' position is that Varela was not an arriving noncitizen seeking admission because he never legally departed the United States. "[A] person who leaves the United States but does not enter another country does not 'enter' the United States upon his return." *Handa v. Crawford*, 312 F. Supp. 2d 1367, 1373 (W.D. Wash. 2004), *aff'd sub nom. Handa v. Clark*, 401 F.3d 1129 (9th Cir. 2005) (citing *Matter of T*, 6 I&N Dec. 638 BIA 1955). There is a difference between "physical" departure and "legal" departure. *Id.* In this case, Varela was never admitted into Mexico as he was instructed to return to the United States border, and he immediately did return to the United States. (ECF No. 12, at ¶¶ 2–8.) Moreover, even if Varela had left the United States, he was not present "without being admitted or paroled." The Form I-213 provided by the Respondents lists Varela's status at "entry" as "Lawful Permanent Resident" at the time of

his detention. (ECF No. 7-1 ("Form I-213"), 2.) Therefore, Varela is not subject to mandatory detention under § 1225(b)(2).

**C. Mandatory Detention Under 8 U.S.C. § 1226(c)(1)(E)**

Alternatively, the Respondents contend that Varela is mandatorily detained under § 1226(c)(1)(E). (Ret., 5–6.) Section 1226(c)(1)(E), commonly referred to as the Laken Riley Act ("LRA"), allows the Government to take into custody any noncitizen who is inadmissible under INA § 212(a)(6)(A) (present without being admitted or paroled) and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of certain enumerated crimes including burglary, theft, and larceny. 8 U.S.C. § 1226(c)(1)(E). The Respondents argue that both requirements are met here. They argue that Varela is inadmissible as present without admission or parole or not possessing required travel documents. (Ret., 5.) And they maintain that his May 1994 and April 2012 convictions both qualify under the LRA. In opposition, Varela argues that neither of his two prior convictions qualify under the LRA.

The Court finds that the LRA does not apply to Varela but not for the reasons he asserts. The LRA clearly applies to Varela's May 1997 burglary conviction. *Grimaldo v. Mullin et al.*, No. 26-cv-02402, 2026 WL 28908601, at *4 (C.D. Cal. Sept. 28, 2026) (holding that a petitioner's conviction under § 459 "fall[s] squarely within the plain language of 8 U.S.C. § 1226(c)(1)(E), subjecting [p]etitioner to mandatory detention"); *Harsh v. Warden of the Golden State Annex Det. Facility*, No. 26-cv-3280, 2026 WL 1893569, at *2 (E.D. Cal. Jun. 30, 2026) ("There is no question that…crimes [under § 459], on their face, qualify as enumerated offenses under the [LRA]."). Similarly, his 2012 vehicle theft conviction also implicates the LRA. *See e.g.*, *Estrada v. Warden of the Golden State Annex Det. Facility*, 26-cv-06147, 2026 WL 2364514, at *2 (E.D. Cal. Aug. 14, 2026). Nevertheless, the LRA does not apply because Varela is not inadmissible under INA § 212(a)(6)(A) as "present without being admitted or paroled." As a lawful permanent resident, Varela was not "an applicant for admission" since he had already been lawfully

"admitted" to the United States. *See Aliber v. Bondi*, No. 26-cv-01055, 2026 WL 1431111, at *2 (D. Nev. May 21, 2026) (holding that the LRA's provision imposing mandatory detention cannot apply to a petitioner who was a lawful permanent resident).

**D. Due Process**

Because Varela is not mandatorily detained under either § 1225(b)(2) or § 1226(c)(1)(E), the Court finds that Varela is subject to detention under § 1226(a). Accordingly, the Court grants the petition on the Varela's Due Process claim. The Court adopts its previous decision in *Tulyakov v. LaRose*, No. 26-cv-01695, 2026 WL 981218 (S.D. Cal. Apr. 13, 2026), to find that—in light of the *Mathews v. Elridge* factors—Varela's liberty interest and the procedural protections afforded that interest outweigh the Respondents' enforcement interest. *See* 424 U.S. 319, 334–35 (1976). Moreover, the Respondents do not contend that any changed circumstances warranted Varela's re-detention.

However, in light of Varela's criminal record, the Court finds immediate release is an improper remedy. *See* 28 U.S.C. § 2243 ("The court shall. . .dispose of the matter as law and justice require."); *cf. Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013) ("In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief.") Instead, the Respondents must provide Varela a bond hearing.

Within fourteen days of the entry of this Order, unless Varela requests a continuance, the Respondents are ordered to grant him an individualized bond hearing before a fair, neutral, and open-minded IJ. The IJ shall consider where Varela will reside, who any surety may be, the appropriateness of non-financial conditions, the nine factors for an IJ to consider in an individualized bond hearing as set forth in *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024),[2] and any other factors the IJ deems relevant in this particular case. *See*

---

[2] The nine factors include the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's

*also In re Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006). The IJ must determine whether Varela is a danger to the community or a flight risk for which there are no conditions available that will deter such risk. If Varela shows by a preponderance of the evidence that he is neither a danger to the community nor a flight risk, the IJ must grant bond. *Rodriguez Vazquez*, 183 F.4th at 1167 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022)). If the IJ denies bond, the judge must make specific findings as to why Varela is a danger to the community or a flight risk, and the Respondents must make the audio of the hearing available to Varela's counsel.

The parties shall file a joint status report on the result of the bond hearing within forty-eight (48) hours of the bond hearing. If the Respondents fail to comply with this writ, Varela can apply to this Court for relief. The Court retains jurisdiction to enforce the writ.

## IV. CONCLUSION

The Court **GRANTS IN PART** the petition and orders that Varela receive a bond hearing. The remedy of outright release without a bond hearing is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: November 19, 2026

Barry Ted Moskowitz

Honorable Barry Ted Moskowitz
United States District Judge

---

> criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (quoting *In re Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006)).